IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NATIONAL RIFLE ASSOCIATION OF AMERICA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ANDREW CUOMO, both individually and in his official capacity; NEW YORK STATE DEPARTMENT OF ECONOMIC DEVELOPMENT d/b/a EMPIRE STATE DEVELOPMENT; and ERIC GERTLER, both individually and in his official capacity,**<br><br>**Defendants.** | CIVIL CASE NO. 1:20-CV-0385 (MAD/DJS) |

## COMPLAINT AND JURY DEMAND

Plaintiff National Rifle Association of America (the "NRA" or "Plaintiff") files this Complaint and Jury Demand ("Complaint") against defendants New York Governor Andrew Cuomo ("Cuomo"), both individually and in his official capacity; the New York State Department of Economic Development d/b/a Empire State Development, and Acting Commissioner, President and CEO of the New York State Department of Economic Development Eric Gertler ("Gertler"), both individually and in his official capacity (collectively, "Defendants"), upon personal knowledge of their own actions, and upon information and belief as to all others matters, as follows:

I.

## PRELIMINARY STATEMENT

This lawsuit redresses a pointless and arbitrary attack on the constitutional rights of New York citizens and residents. By executive order 202.8, issued on March 20, 2020, Defendant Cuomo effectively and indefinitely suspended a key component of the Second Amendment to the

United States Constitution—shutting down all gun stores in the State of New York, including federally licensed gun stores, by deeming them "non-essential" businesses.

Citizens of New York (with few exceptions) can only purchase firearms through a regulatory patchwork entailing federally-licensed dealers and background checks. By closing federally licensed dealers, Defendants have cut off the only way of legally purchasing firearms in the State. As a result of the government's overreach, most New Yorkers have no legal way to exercise the constitutional right to purchase arms or ammunition.

The United States Supreme Court recognizes that the right to keep and bear arms is fundamental and belongs to the individual, not the government. Moreover, a core purpose of that right is self defense.[1] The current public health emergency does not justify impeding the exercise of Second Amendment rights, especially during a time when many New Yorkers have valid concerns about the ability of the government to maintain order—and criminals are being prematurely released from jails. Indeed, on March 28, 2020, the United States Department of Homeland Security issued a list of critical infrastructure, listing as critical: "Workers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges." The federal government and numerous states have recognized that even during the current crisis, manufacturing and sales of firearms are rights guaranteed by the Constitution. They are also critical to public safety and security.

Defendants' closure of firearms retailers is a cynical and pretextual attack on the Second Amendment rights of the people of New York. While New Yorkers cannot purchase firearms or ammunition to protect their families, Defendants and state officials readily classified, as

---

[1] *See D.C. v. Heller*, 554 U.S. 570, 584 (2008).

"essential," sales of goods such as liquor, [2] pizza, coffee, donuts, and luxury condominiums. Yet, in the face of contrary federal guidance and ample constitutional authority, Governor Cuomo refuses to extend the same dispensation to firearm retailers.

Plaintiff appreciates the grave threat to health posed by COVID-19, and the societal disruption it has caused. However, history reminds us that incursions upon constitutional liberties which are rationalized in the midst of an emergency frequently linger longer, and do more harm, than the emergency itself. [3] Reasonable steps to prevent the spread of the COVID-19 coronavirus do not include the suspension of the Second Amendment. Plaintiff asks the Court to declare that the Second Amendment right to bear arms requires that citizens and residents of New York be afforded reasonable access to purchase firearms and ammunition, and to prohibit Defendants from needlessly forcing gun stores to remain closed.

---

[2] *See* New York State Liquor Authority, SLA COVID-19 Guidance on Restrictions, To-Go Delivery, and Q&A, *available at* https://sla.ny.gov/Restrictions-in-Response-to-COVID-19 ("Under the Governor's direction, the manufacture, distribution and sale of alcoholic beverages are deemed essential, thus not subject to the Governor's ordered workforce reductions. "). The New York State Department of Health estimated in 2016 that over 4,000 New Yorkers die prematurely each year from excessive alcohol consumption. *See* New York State Department of Health, Behavioral and Risk Factor Surveillance System Brief Number 1812, *available a*t https://www.health.ny.gov/statistics/brfss/reports/docs/1812_alc_drinking.pdf.

[3] *See Toyosaburo Korematsu v. United States*, 323 U.S. 214, 246, 65 S. Ct. 193, 207, 89 L. Ed. 194 (1944), *abrogated by Trump v. Hawaii*, 138 S. Ct. 2392, 201 L. Ed. 2d 775 (2018) (Jackson, J., dissenting) ("All who observe the work of courts are familiar with what Judge Cardozo described as 'the tendency of a principle to expand itself to the limit of its logic.' A military commander may overstep the bounds of constitutionality, and it is an incident. But if we review and approve, that passing incident becomes the doctrine of the Constitution. There it has a generative power of its own, and all that it creates will be in its own image. Nothing better illustrates this danger than does the Court's opinion in this case.")

## II.

## **PARTIES**

1. Plaintiff the National Rifle Association of America is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's leading provider of gun-safety and marksmanship education for civilians and law enforcement. It is also the foremost defender of the Second Amendment to the United States Constitution. The NRA has approximately five million members and its programs reach millions more.

2. As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated New York residents and visitors who knowingly or unknowingly are subject to the New York orders, statutes, regulations, policies, practices, and customs in question. The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify according relief to Plaintiff in a representative capacity. Further, to the extent it becomes necessary or appropriate, the NRA is uniquely able to communicate with and provide notice to its hundreds of thousands of New York members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

3. Defendant Andrew Cuomo is the Governor of the State of New York and, at all times relevant to the Complaint, was acting under color of state law. His principal place of business is The State Capitol Building, Albany, New York 12224. Cuomo is sued in his individual and official capacities.

4. Defendant New York State Department of Economic Development d/b/a Empire State Development is a public benefit corporation, with three main offices, including one located at 625 Broadway, Albany, NY 12245.

5. Defendant Eric Gertler is Acting Commissioner, President and CEO of the New York State Department of Economic Development and, at all times relevant to the Complaint, was acting under color of state law. His principal place of business is at 625 Broadway, Albany, NY 12245.  Eric Gertler is sued in his individual and official capacities.

### III.

### JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over the claims asserted in this action because this action involves claims based on the Second, Fifth and Fourteenth Amendments to the United States Constitution (U.S. Const. amend. II, V, XIV), and because the action seeks to prevent state officials from interfering with federal rights. Further, subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations under color of state law of rights, privileges, and immunities secured by the United States Constitution.

7. Pursuant to 28 U.S.C. § 1391(b), venue is properly vested in this Court because at least one defendant resides in this judicial district and all defendants reside in the State of New York.

8. There is a present and actual controversy between the parties.

9. The relief requested is authorized pursuant to 28 U.S.C. § 1343(a)(4) (recovery of damages or equitable relief or any other such relief for the protection of civil rights), 28 U.S.C. § 1651(a) (injunctive relief), 28 U.S.C. §§ 2201 and 2202 (declaratory and other appropriate relief),

42 U.S.C. § 1983 (deprivation of rights, privileges, and immunities secured by the Constitution), and 42 U.S.C. § 1988 (awards of attorneys' fees and costs).

## IV.

## STATEMENT OF RELEVANT FACTS

**A.     Relevant Authority**

10.     The Second Amendment to the United States Constitution reads: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed."

11.     The Fifth Amendment to the United States Constitution reads in pertinent part: "[N]or shall any person … be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

12.     The Supreme Court has held that "[t]he fundamental principle that laws regulating persons or entities must give fair notice of what conduct is required or proscribed, is essential to the protections provided by the Fifth Amendment's Due Process Clause."[4]

13.     The Fourteenth Amendment to the United States Constitution reads in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

---

[4] *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 132 S. Ct. 2307, 2309, 183 L. Ed. 2d 234 (2012)

B.    **The Executive Order**

14.    On March 18, 2020, Defendant Cuomo issued executive order 202.6 ordering that "[e]ach employer shall reduce the in-person workforce at any work locations by 50% no later than March 20 at 8 p.m." Executive order 202.6 further provides that "[a]ny essential business or entity providing essential services or functions shall not be subject to the in-person restriction." The order further provides that "[n]o later than 5 p.m. on March 19, 2020, the Empire State Development Corporation shall issue guidance as to which business are determined to be essential." A copy of executive order 202.6 is attached as Exhibit A.

15.    On March 20, 2020, Defendant Cuomo issued executive order 202.8, which amended executive order 202.6 and ordered that "[e]ach employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m." By reducing the in-person workforce at work locations by 100%, the order effectively mandates the closure of most retail stores and offices throughout the State. Executive order 202.8 further provides that any business violating its provisions shall be subject to enforcement as if it were in violation of an order pursuant to section 12 of the Public Health Law. A copy of executive order 202.8 is attached as Exhibit B.

16.    On or about March 19, 2020 the Empire State Development Corporation issued "Guidance for Determining whether a Business Enterprise is Subject to Workforce Reduction under Recent Executive Orders," which continues to be published on its website (as updated from time to time, the "Empire State Development Guidance"). A copy of the Empire State Development Guidance is attached as Exhibit C. Executive order 202.6, as amended by executive order 202.8, together with the Empire State Development Guidance, are collectively referred to herein as the "Executive Order".

17. The Empire State Development Guidance provides that, "for purposes of Executive Order 202.6, "Essential Business," means businesses operating in or as" any of a list of illustrative and non-exclusive categories of businesses. The list of "Essential Businesses" does not include firearm and ammunition manufacturers or retailers.

18. As defined in the Empire State Development Guidance, "Essential Business" includes "Essential Retail Including" grocery stores and other listed types of stores. By its own terms (in particular the use of the word "including"), the guidance indicates that some retail stores other than those explicitly enumerated would count as "Essential Retail." However, New Yorkers are left to guess what other retail would count as "Essential Retail."

19. The Empire State Development Guidance further states that "essential businesses" and "essential services" include: "Essential Services Necessary to Maintain the Safety, Sanitation and Essential Operations of Residences or Other Essential Businesses, Including:…security." However, again, New Yorkers are left to guess what businesses would be considered necessary to maintain safety and security.

20. While many reasonable Americans would consider stores that sell ammunition and firearms, repair firearms and provide training on gun safety, to be necessary for the maintenance of safety and security, New York state and local officials have acted inconsistently with that interpretation. In the last several weeks, Defendants have interpreted and caused the enforcement of the Executive Order to require the closure of substantially all retailers of firearms and ammunition in the State of New York.

21. The Empire State Development Guidance states that "[i]f the function of your business is not listed above, but you believe that it is essential or it is an entity providing essential services or functions, you may request designation as an essential business." The State webpage

containing the Empire State Development Guidance includes a link where a business can provide additional information and request designation as an essential business. A substantial number of firearm retailers have submitted requests for designation of their businesses and essential but have received no response or received an electronic message that there is a backlog of requests and that responses will be delayed. As of the date hereof, firearm and ammunition retailers have not been officially or unofficially designated as essential businesses.

C.      **State of New York Shuts Down Gun Stores**

22.     The Executive Order states by its own terms that it does not require the closure of "essential retail" and "essential services" including those that provide "security." A reasonable person could interpret the Executive Order as permitting gun stores to remain open. Nevertheless, through their action and inaction, Defendants have interpreted the Executive Order as requiring gun stores to close down and have caused gun stores to close down throughout the State of New York.

23.     Defendants issued and have maintained the Executive Order in force and effect, knowing that doing so has the effect of causing firearm and ammunition retailers to shut down and severely restricts the ability of New York citizens and residents to purchase firearms and ammunition.

24.     The forced closure of gun stores throughout New York effectively makes it impossible to legally purchase guns in the State. Under New York's SAFE Act,[5] as of March 15, 2013, all private handgun, rifle or shotgun sales or transfers in New York (with the exception of those sales or transfers to and between certain family members) require a background check of the

---

[5] Act of Jan. 15, 2013, ch. 1, § 37, 2013 N.Y. Laws 1.

buyer. Therefore, consumers can only purchase firearms from federally licensed dealers capable of performing an NICS background check.

25. Almost all big box stores and non-specialized retailers in New York that typically sell firearms and ammunition stopped selling firearms and ammunition shortly before the issuance of the Executive Order. As is widely known, these retailers stopped selling firearms and ammunition in reaction to pressure from Defendants and other State authorities.

26. Therefore, immediately prior to enactment of the Executive Order, consumers wishing to exercise their Second Amendment right to purchase firearms or ammunition relied on licensed gun stores and dealers, substantially all of which have now shut down due to enforcement of the Executive Order. Through the enactment and enforcement of the Executive Order, Defendants have effectively deprived consumers in New York of any options for lawfully purchasing firearms or ammunition in the State.

27. John Doe #1 is a resident of the State of New York and member of the NRA, and, but for Defendants' conduct as alleged in this Complaint, is legally entitled to and would purchase firearms and ammunition in the State of New York for his personal use.

28. John Doe #2 is a resident of the State of New York and member of the NRA, and, but for Defendants' conduct as alleged in this Complaint, is legally entitled to and would purchase firearms and ammunition in the State of New York for his personal use.

29. John Doe #3 is a resident of the State of New York and a member of the NRA, has all necessary federal, state and local licenses required for the sale of firearms and ammunition and, but for the well-founded fear of sanctions based on Defendants' conduct as alleged in this Complaint, would perform background checks and sell and transfer firearms and ammunition in the State of New York.

30. The NRA represents tens of thousands of members in the State of New York who desire to purchase firearms or ammunition but cannot do so as a result of the actions of Defendants alleged in this Complaint.

D. **State of New York Refuses to Clarify that Gun Stores are Essential**

31. The executive order issued by Defendant Cuomo is similar to orders issued by states and localities throughout the United States, ordering the closure of all but "essential" businesses and entities. In many states, authorities have issued "shelter in place" orders expressly categorizing gun stores as "essential businesses." In other states, authorities issued "shelter in place" orders that failed to explicitly categorize gun stores as essential, yet later issued statements or guidance clarifying that gun stores are essential businesses and may remain open.

32. On March 24, 2020, the governor of Pennsylvania modified his original order and reclassified gun stores as "life-sustaining", allowing gun stores to remain open so long as they comply with social distancing rules.

33. On March 27, 2020, the Attorney General of Texas issued an opinion that gun stores must be allowed to remain open in that state.

34. On March 28, 2020, the United States Department of Homeland Security issued a list of critical infrastructure "intended to help State, local, tribal and territorial officials as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." This list of critical infrastructure includes: "Workers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges."

35. On March 30, 2020, the governor of New Jersey announced that gun stores will be classified as "essential businesses" and allowed to reopen in that state. He stated: "In accordance

with the guidance released over the weekend by the federal Department of Homeland Security, we will allow firearms sellers to operate."

36.     On March 26, 2020, New York State Senator Robert G. Ortt sent an open letter to defendant Cuomo stating that the Senator was "writing to get clarification on Executive Order 202.6 to ensure the safety of New Yorkers."  The letter further stated: "The Order requires the closure of non-essential businesses, and lists industries that are deemed 'essential.' According to the Order, a class of exempt businesses is 'vendors that provide essential services or products.' I urge you to consider gun and sporting shops as providers of essential goods and services."

37.     As further explained by Senator Ortt, "New York can and should open gun shops in a way that continues to protect New Yorkers from coronavirus. Shops in Pennsylvania, for example, are only allowed to operate under limited hours, and can only make sales via individual appointments to eliminate store crowds. I believe gun shops in New York would be happy to comply with any public health recommendations, but closing them outright unnecessarily deprives New Yorkers of their Second Amendment right."  A copy of Senator Ortt's letter is attached as Exhibit D hereto.

38.     Despite these efforts to clarify the scope of various "shelter in place" orders while respecting the Second Amendment rights of citizens, Defendant Cuomo has refused to clarify the meaning of the Executive Order, to provide any assurances that gun stores are essential businesses, or to stop enforcement actions against gun stores by state and local officials. These actions and inactions have had the desired chilling effect on the owners of gun stores and the intended effect of depriving New Yorkers' Second Amendment rights.

39. Tens of thousands of New Yorkers have been prevented from buying firearms and ammunition by Defendants' illegal actions.[6] Gun stores throughout New York continued to experience long lines and high demand up until they were forced to close by Defendants.

40. Many New York citizens and residents desiring to purchase firearms and ammunition have experienced empty shelves, long lines and tense atmospheres while shopping for other essential goods. They have read about the release of thousands of prisoners by state officials, and they are concerned about the ability of police forces to maintain order when officers fear contact with COVID-19 or have fallen ill themselves. The desire of these New Yorkers to purchase firearms and ammunition to protect themselves and their families is rational and well-founded. More importantly, Defendants do not have the right to substitute their own judgment for that of individuals who might want to purchase firearms and ammunition, or to declare that the Second Amendment does not apply until further notice.

V.

**CLAIMS**

A. **Count One: Violation Of Second And Fourteenth Amendment Rights Under 42 U.S.C. § 1983**

41. Plaintiff repeats and re-allege each and every allegation in the preceding paragraphs as though fully set forth herein.

42. Defendants' orders, policies, practices and enforcement actions have forced the closure of firearm and ammunition retailers throughout the State of New York and prevented the

---

[6] *See, e.g.*, Anne McCloy, *Gun sales soaring due to coronavirus fears, stores placing limits on supplies*, CBS 6 News WRGB Albany, Mar. 20, 2020, https://cbs6albany.com/news/coronavirus/gun-sales-soaring-due-to-coronavirus-fears-stores-placing-limits-on-supplies.

citizens and residents of New York from exercising their Second Amendment right to purchase firearms for self-defense, hunting and other lawful purposes.

43. Defendants' orders, policies, practices and enforcement actions substantially burden the Second Amendment right of citizens and residents of the State of New York to keep and bear arms. The public health concerns used to justify the closure of firearm and ammunitions retailers do not constitute a compelling state interest in light of the fact that firearm and ammunition retailers constitute a small part of the retail economy in this State, and many other retailers, including liquor stores, have been allowed to remain open. Furthermore, assuming *arguendo* that the Executive Order serves a compelling state interest, the sweeping closure of substantially all firearm and ammunition retailers is illegal because it is not narrowly tailored to serve that interest, as evidenced by the fact that other retail stores, including liquor stores, have been allowed to remain open subject to taking reasonable precautions to prevent the spread COVID-19.

44. Defendants' orders, policies, practices and enforcement actions are unjustified and constitute an unreasonable restriction of the Second Amendment rights of Plaintiff, members of the NRA and citizens and residents of New York who desire to purchase firearms or ammunition.

45. Defendants' intrusion upon the Second Amendment rights of Plaintiff, members of the NRA and other residents and citizens is not merely incidental to a broad order designed to protect the public's safety. The issue of whether firearm and ammunition retailers should remain open during the states of emergency declared across the country is of national prominence, about which there is reporting almost every day in the news. A litany of officials from states around the nation has announced that firearm and ammunition retailers will be treated as essential businesses and critical infrastructure. Many firearm and ammunition retailers and their owners have formally sought the designation of firearm and ammunition retailers as essential businesses through the

State's official website, as has State Senator Ortt, in an open letter to Defendant Cuomo. The federal Department of Homeland Security has acted to declare that firearm manufacturers and retailers are critical infrastructure.

46. Defendants have intentionally refused to clarify the scope of the Executive Order and to classify certain businesses as essential — affirmatively going out of their way to protect liquor stores and release criminals onto the streets, while ignoring the public's outcry over the suspension of Second Amendment rights. Defendants could easily allow firearm and ammunition retailers to reopen simply by publicly stating that firearm and ammunition retailers will be considered essential businesses or that they will refrain from enforcing the Executive Order against firearm and ammunition retailers. Notably, the closure of firearm retailers, but not liquor retailers, bears no reasonable relation to the State's interest in slowing the spread of COVID-19—and certainly is not narrowly tailored to accomplish that objective. Defendants are aware that the Executive Order unreasonably interferes with Second Amendment rights, and could easily correct this defect by classifying firearms retailers as "essential," yet insist for reasons of apparent political animus[7] that gun stores remain closed.

---

[7] Defendant Cuomo has declared that conservative firearms advocates "have no place in the state of New York." Heather Long, *Conservatives aren't welcome in New York, according to Governor Cuomo*, THE GUARDIAN (Jan. 14, 2014, 8:49 AM), https://www.theguardian.com/commentisfree/ 2014/jan/24/governor-cuomo-conservatives-not-welcome-new-york. Defendant Cuomo has sought to banish "the enemy" from public discourse altogether, and remains dissatisfied with what he perceives to be the excessive political influence of "conservatives and the Second Amendment types." YOUTUBE, *Gov. Andrew Cuomo On Background Checks: "Bunch Of Boloney" | The Beat With Ari Melber | MSNBC*, https://www.youtube.com/watch?v=Tz8X07fZ39o (last visited April 1, 2020).

B. **Count Two: Violation Of Fifth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983**

47. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as though fully set forth herein.

48. The Executive Order is confusing, overbroad and unconstitutionally vague as applied to enforce the closure of firearm and ammunition retailers.

49. Firearm and ammunition retailers sell products that are used for personal protection and home security. In other states, and according to the federal government, firearm and ammunition retailers have been designated as essential and as critical infrastructure

50. As applied to firearm and ammunition retailers, the Executive Order is not sufficiently specific to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and to provide explicit standards to avoid arbitrary and discriminatory enforcement, because the Executive Order provides that "essential retail" and "essential services necessary to maintain safety" including "security" are designated as "essential businesses." As so defined, the Executive Order, including the Empire State Development Guidance, could reasonably be interpreted to mean that firearm retailers fall within the intended definition of "essential businesses," contrary to the actions of State and local officials that have enforced and continue to enforce the Executive Order to threaten and force the closure of firearm and ammunition retailers.

51. Furthermore, the list of "essential retail" listed in the Empire State Development Guidance is, by its own terms, illustrative and non-exclusive, and states that essential businesses exempt from the order to shut down include "essential retail **including**…" but not limited to those expressly enumerated. (Emphasis added). Enforcement against firearm and ammunition retailers violates the due process clause because the Executive Order fails to give adequate guidance to

those who would be law-abiding, forcing them to guess whether gun stores are essential businesses or not. The Executive Order also fails to guide courts in adjudicating cases in which gun stores and their owners and employees are accused of violating the Executive Order.

52. Confusion over the meaning of the executive order is heightened by the fact that Defendants have designated liquor stores as essential. A reasonable person would conclude that if liquor stores are essential, then retailers that sell products integral to our Second Amendment freedoms must *a fortiori* be essential as well.

53. Enforcement actions purporting to enforce the Executive Order to force the closure of firearm and ammunition retailers are arbitrary and capricious and violate the constitutional rights of gun stores and their owners, including members of the NRA, as well as the rights of members of the NRA and the general public who desire to purchase firearms and ammunition.

## VI.

## DEMAND FOR JURY TRIAL

54. Plaintiff hereby demands a trial by jury on all issues so triable.

## VII.

## REQUEST FOR RELIEF

WHEREFORE the Plaintiff respectfully requests that the Court enter judgment in the Plaintiff's favor and against Defendants, as follows:

a. A declaration that firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges constitute essential businesses and services under the Executive Order and are allowed to operate or, alternatively, that Defendants' prohibition of the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges violates the Second, Fifth and Fourteenth Amendments.

b. A temporary restraining order, preliminary injunction and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of such order or injunction, from enforcing the Executive Order to prohibit the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges.

c. Nominal damages against Defendants on behalf of members of the NRA who are consumers and that have been prevented by Defendants' actions from purchasing ammunition or firearms.

d. Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

e. Granting Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: ___*/s/ William A. Brewer III*___
William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR PLAINTIFF**