**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**NATIONAL RIFLE ASSOCIATION**
**OF AMERICA,**

                                        **Plaintiff,**

            **vs.**                                                **1:20-CV-385**
                                                                        **(MAD/DJS)**

**ANDREW CUOMO,** _both individually and in his_
_official capacity_**; NEW YORK STATE**
**DEPARTMENT OF ECONOMIC DEVELOPMENT**
**d/b/a EMPIRE STATE DEVELOPMENT; ERIC**
**GERTLER,** _both individually and in his official_
_capacity_**; NEW YORK STATE DEPARTMENT OF**
**LABOR; and ROBERTA REARDON,** _both_
_individually and in her official capacity_**,**

                                        **Defendants.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**BREWER, ATTORNEYS &**                  **SARAH ROGERS, ESQ.**
**COUNSELORS**                              **WILLIAM A. BREWER, III, ESQ.**
750 Lexington Avenue                      **PETER BACH-Y-RITA, ESQ.**
Floor 14
New York, New York 10022
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**              **ANDREW W. KOSTER, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff National Rifle Association of America (the "NRA") commenced this action on

April 2, 2020, asserting two claims pursuant to 42 U.S.C. § 1983, arising out of the issuance of

Executive Order 202.8.  *See generally* Dkt. No. 1.  Plaintiff filed an amended complaint on April

27, 2020, and the first amended complaint alleges that Plaintiff was deprived of its rights under

the Second, Fifth, and Fourteenth Amendments when non-essential employers, including gun

retailers and ammunition manufacturers not fulfilling orders for law enforcement had to reduce

their in-person workforce by 100% no later than 8:00 PM on March 22, 2020 pursuant to

Executive Order 202.8 (the "Executive Order").  *See* Dkt. No. 8.

On June 22, 2020, Defendants New York Governor Andrew Cuomo, both individually and

in his official capacity, the New York State Department of Economic Development d/b/a Empire

State Development, Acting Commissioner, President and Chief Executive Officer of the New

York State Department of Economic Development Eric Gertler, both individually and in his

official capacity, the New York State Department of Labor, and New York State Department of

Labor Commissioner Roberta Reardon, both individually and in her official capacity (collectively

"Defendants") moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment

on the pleadings.  *See* Dkt. No. 18.  Plaintiff filed a response on July 6, 2020, opposing

Defendants' motion and cross-moving for leave to amend the first amended complaint.  *See* Dkt.

No. 22.  As set forth below, Defendants' motion for judgment on the pleadings is granted, and

Plaintiff's cross-motion for leave to amend the first amended complaint is denied.

## II. BACKGROUND

On April 2, 2020, Plaintiff commenced this action alleging that Defendants violated

several provisions of the United States Constitution.  *See* Dkt. No. 1.  Plaintiff filed an amended

complaint dated April 27, 2020.  *See* Dkt. No. 8.  The amended complaint alleges violations of

Plaintiff's constitutional rights stemming from Executive Order 202.8, issued on March 20, 2020,

by which Defendant Cuomo indefinitely shut down gun stores in New York by designating them

as "non-essential" businesses.  *See id.* at 2.  Plaintiff's causes of action claim violations of the

Second, Fifth and Fourteenth Amendments of the United States Constitution.  *See id.* at ¶¶ 53-65.

Plaintiff seeks the following relief:

> a.  A declaration that firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges constitute essential businesses and services under the Executive Order and are allowed to operate or, alternatively, that Defendants' prohibition of the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges violates the Second, Fifth and Fourteenth Amendments.

> b.  A temporary restraining order, preliminary injunction and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of such order or injunction, from enforcing the Executive Order to prohibit the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges.

> c.  Nominal damages against Defendants on behalf of members of the NRA who are consumers and that have been prevented by Defendants' actions from purchasing ammunition or firearms.

> d.  Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Dkt. No. 8 at 21.

Currently before the Court is Defendants' motion for judgment on the pleadings and

Plaintiff's cross-motion for leave to amend the first amended complaint.  *See* Dkt. Nos. 18, 22.

### III. DISCUSSION

**A.**    **Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are

closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

3

Fed. R. Civ. P. 12(c).  When a party makes a Rule 12(c) motion, the court applies the same standard as when a party files a Rule 12(b)(6) motion.  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citation omitted).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with'

4

a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

In deciding a motion to dismiss, the court may consider "documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken[.]" *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citing *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)) (other citation omitted).  "Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)).

**B.     Standing**

Defendants allege that Plaintiff's first amended complaint must be dismissed because Plaintiff lacks standing, as it brought these claims only on behalf of its members.  *See* Dkt. No. 18-1 at 3–4.

"'[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (quotation omitted).

"'[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.'" *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)).  In *Warth*, the Supreme Court held that an association seeking to recover damages on behalf of its members lacked standing because "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515–16.  The *Warth* Court stated that

> [i]f in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.  Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id.* at 515.

This does not mean, however, that an association automatically satisfies the third prong of the *Hunt* test simply by requesting equitable relief rather than damages.  "The organization lacks standing to assert claims of injunctive relief on behalf of its members where 'the fact and extent' of the injury that gives rise to the claims for injunctive relief 'would require individualized proof,' *Warth v. Seldin*, 422 U.S. at 515–16, 95 S. Ct. 2197, or where 'the relief requested [would] require [ ] the participation of individual members in the lawsuit,' *Hunt*, 432 U.S. at 343, 97 S. Ct. 2434." *Bano*, 361 F.3d at 714.  The *Hunt* test may be satisfied, however, where the association seeks a purely legal ruling without requesting that the federal court award individualized relief to its members.  *See id.*

In the present matter, the first amended complaint alleges as follows:

6

> As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated New York residents and visitors who knowingly or unknowingly are subject to the New York orders, statutes, regulations, policies, practices, and customs in question. The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify according relief to Plaintiff in a representative capacity. Further, to the extent it becomes necessary or appropriate, the NRA is uniquely able to communicate with and provide notice to its hundreds of thousands of New York members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

Dkt. No. 8 at ¶ 2. Based on these allegations, it is clear that Plaintiff brought this suit in its representational capacity.

It is the law of the Second Circuit "that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983," as the Second Circuit has "'interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured.'" *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984)); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 788 Fed. Appx. 85, 85 (2d Cir. 2019) ("[T]he organizational plaintiffs bringing this appeal do not have standing to assert claims under 42 U.S.C. § 1983 on behalf of their members"); *N.Y. State Citizens' Coalition for Children v. Poole*, 922 F.3d 69, 74–75 (2d Cir. 2019) ("In a string of opinions, this Court has held that organizations suing under Section 1983 must, without relying on their members' injuries, assert that their own injuries are sufficient to satisfy Article III's standing requirements"); *N.Y. State Citizens´ Coal. for Children v. Velez*, 629 Fed. Appx. 92, 93–94 (2d Cir. 2015) (quoting *Nnebe*, 644 F.3d at 156). The Second Circuit has explicitly held that courts in the Circuit are "bound by the implicit

7

determination of prior panels that the rule survives [*Warth v. Seldin*, 522 U.S. 490 (1975)] until such time as [our prior decisions] are overruled either by an *en banc* panel of our Court or by the Supreme Court." *Nnebe*, 644 F.3d at 156 n.5 (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004)).

The Court agrees with Defendants that Plaintiff cannot succeed in asserting associational standing. Dkt. No. 18-1 at 4. While Plaintiff argues that this Court should abandon Second Circuit precedent, this Court is indeed bound by the precedent set by the Second Circuit "until such a time as [prior decisions] are overruled . . . ." *Nnebe*, 644 F.3d at 156 n.5 (internal quotation and citation omitted). In the first amended complaint, Plaintiff repeatedly references its claims are being made in a representative capacity. *See, e.g.*, Dkt. No. 8 at ¶ 2 ("As to all claims made in a representative capacity herein . . .); *id.* ("Considerations of necessity, convenience, and justice justify according relief to Plaintiff in a representative capacity"); *id.* at 21 (seeking nominal damages "on behalf of members of the NRA who are consumers and that have been prevented by Defendants' actions from purchasing ammunition or firearms"). Because the law of the Second Circuit is that, under 42 U.S.C. § 1983, an association cannot bring an action as the representative of its members, this Court finds that Plaintiff has not adequately pled associational standing. *See Nnebe*, 644 F.3d at 156.[1]

---

[1] The Court has also considered the rule of "prudential standing." *Poole*, 922 F.3d at 75. As the Second Circuit has stated, "[w]hen any plaintiff asserts the rights of others, it has traditionally also faced, in our court, a rule of prudential standing: the so-called third-party standing bar." *Id.* "Whatever the status of the third-party standing bar," cases in the Second Circuit have "developed an exception to it where a plaintiff can show '(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests.'" *See id.* (quoting *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 41 (2d Cir. 2015)). Even if the Court were to assume that Plaintiff and the relevant third parties "have a sufficiently close relationship to satisfy the first prong of this test, [Plaintiff] has not shown, or even alleged, that its [members] would have any difficulty asserting their own interests. As a result, it has failed to offer any

(continued...)

**C.     Cross-Motion to Amend**

According to Rule 15 of the Federal Rules of Civil Procedure, when unable to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, leave will only be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 468 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).  As the Court has noted previously, in deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion under Rule 12(b)(6).

*1. Undue Delay*

---

[1](...continued)
reason for [the Court] to lift the prudential bar against asserting the rights of others."  *Keepers, Inc.*, 807 F.3d at 41.  The Court emphasizes the limited nature of this holding, "which reflects the absence of any suggestion in the briefs or the record that [Plaintiff's members] would face any difficulty in defending their own interests."  *Id.*  Furthermore, while "the bar is not 'absolute,' and 'there may be circumstances where it is necessary to grant a third party standing to assert the rights of another,'" the Court has determined above that Plaintiff has not adequately pled the relevant exception of associational standing.  *Disability Rights N.Y. v. N.Y. State*, No. 17-CV-6965, 2019 WL 2497907, *5 (E.D.N.Y. June 14, 2019) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004)).  To overcome the bar of prudential standing to assert the rights of its members, Plaintiff was required to show its members would have had difficulty asserting their own interests, or that an exception to the prohibition applied; it did not, and thus, its claims must be dismissed.  *See Disability Rights N.Y.*, 2019 WL 2497907, at *5.

In general, "permission to amend should be freely granted." *Cresswell v. Sullivan &*
*Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citing *Foman*, 371 U.S. at 182).  However, courts may
deny a party's motion for leave to amend a pleading "where the motion is made after an inordinate
delay." *Id.*  "When a considerable period of time has passed between the filing of the complaint
and the motion to amend, courts have placed the burden upon the movant to show some valid
reason for his neglect and delay." *Id.* (citations omitted).  "Mere delay, however, absent a
showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the
right to amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)
(citations omitted).

Here, Plaintiff's cross-motion to amend was filed approximately three months after the
original complaint was filed.  *See* Dkt. Nos. 1, 22.  Courts in this Circuit have found that similar
and even longer delays are insufficient to warrant denial of leave to amend.  *See, e.g.*, *Middle*
*Atlantic Utils. Co. v. S.M.W. Dev. Corp*., 392 F.2d 380, 384 (2d Cir. 1968) (holding that a three
year delay from the filing of the initial complaint was a factor to be considered but, in the absence
of bad faith or prejudice to the opposing party, the delay alone was insufficient to deny relief); *see*
*also Catapano v. Western Airlines, Inc.*, 105 F.R.D. 621, 623 (E.D.N.Y. 1985) (stating that a
period of one year between the plaintiff's filing of the original complaint and the plaintiff's motion
to amend is not enough to constitute undue delay).  Accordingly, the Court finds that the three
month delay in filing a second amended complaint does not constitute undue delay.

### 2. Bad Faith

Under Rule 15(a), a moving party's dilatory motive can also provide a basis for a court's
denying that party's motion to amend a pleading.  *See Am. Med. Ass'n v. United Healthcare Corp.*,
No. 00-CV-2800, 2006 WL 3833440, *4 (S.D.N.Y. July 24, 2008) (citing *Foman*, 371 U.S. at

182).  Here, Defendants do not allege, nor does the record indicate, that Plaintiff's cross-motion to amend was brought in bad faith.  *See* Dkt. No. 23.  Accordingly, the Court finds that Plaintiff's cross-motion to amend has not been made in bad faith or with a dilatory motive.

### 3. Undue Prejudice to Defendant

A party's motion for leave to amend the pleadings may be denied when the proposed amendment would cause undue prejudice to the nonmoving party.  *See Foman*, 371 U.S. at 182.  The burden is on the party opposing the motion to establish that "'granting such leave would be unduly prejudicial.'"  *Breyette v. Amedore*, 205 F.R.D. 416, 418 (N.D.N.Y. 2002) (quoting *State of New York v. Panex Indus., Inc.*, No. 94–CV–0400E, 1997 WL 128369, *2 (W.D.N.Y. Mar. 14, 1997)).  In determining what constitutes prejudice, courts consider whether the assertion of the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Id*. (citation and internal quotations omitted).  "Courts also consider the particular procedural posture of the case." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)).  Finally, "[c]ourts will . . . consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading." *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 35 (N.D.N.Y. 2009) (citing *Hanlin v. Mitchelson*, 794 F.2d 824, 841 (2d Cir. 1986)) (other citation omitted).

The Court finds that, because the cross-motion to amend has been made at a relatively early stage of the proceeding (*i.e.*, approximately three months after the filing of the original complaint and before discovery has commenced), and that Plaintiff seeks to add allegations to

support standing, Defendants will not suffer undue prejudice as a result of the amendment.

Moreover, Defendants do not contend that they would be prejudiced.  *See* Dkt. No. 23.  Thus,

Plaintiff's proposed second amended complaint would not unduly prejudice Defendants.

### 4. Futility

"In addition to undue delay, bad faith, and undue prejudice, a court may exercise its

discretion to deny a party's motion to amend a pleading when the proposed amendment would be

futile."  *Am. Med. Ass'n*, 2006 WL 3833440, at *7 (citing *Foman*, 371 U.S. at 182).  An

amendment is considered futile if it could not withstand a motion to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  To survive such a motion, a party need only

plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient

factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557

(quotation omitted).  Plaintiff seeks leave to file a second amended complaint to include

additional allegations, "which form an independent basis for [Plaintiff's] standing in this case."

Dkt. No. 22 at 7.  Plaintiff seeks to add facts it contends will support an organizational standing

theory.  *See generally* Dkt. No. 22-1.  Defendants oppose this proposed amendment, alleging it is

futile because the proposed additional facts do not support the organizational standing theory.  *See*

Dkt. No. 23 at 7.

"Like an individual plaintiff, an organization must show actual or threatened injury in fact

that is 'fairly traceable to the alleged illegal action and likely to be redressed by a favorable court

decision.'"  *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (quoting

*Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).  To meet that test, "the plaintiff

organization must prove that it has suffered an injury in fact, that the injury and the challenged

conduct are causally connected, and that the injury will likely be redressed by a favorable

12

decision." *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 541 (S.D.N.Y. 2006) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Because of the injury in fact requirements, "'an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III.'" *Ragin*, 6. F3d at 905 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).  "Moreover, an organization lacks standing to sue in its own right as a result of injuries that are not fairly traceable to the defendant." *Doe*, 462 F. Supp. 2d at 541 (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).  "An organization cannot manufacture injury in fact by bootstrapping the expenditure of resources on the lawsuit in which it alleges that it has standing." *Id.* (citing *Spann*, 499 F.2d at 27).  "In other words, an organization must show 'concrete and demonstrable injury to the organization's activities,' as opposed to a mere 'setback to the organization's abstract social interests.'" *Natural Res. Defense Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

Plaintiff's proposed second amended complaint adds facts that Plaintiff alleges supports an organizational standing claim.  The injuries allegedly suffered by Plaintiff as an organization are that Defendants' conduct forced Plaintiff "to dedicate staff and resources to fielding . . . calls and providing advice to its members."  Dkt. No. 22-1 at ¶ 39.  Plaintiff further alleges that "[t]he time and resources dedicated to these efforts was diverted from the NRA's core functions of advocacy, safety and training" and that Plaintiff had to "cancel firearm education and training events in the State of New York and therefore preventing [Plaintiff] from conducting its core functions and responsibilities."  *Id.* at ¶¶ 39–40.  The relief Plaintiff seeks includes nominal damages, as well as injunctive and declaratory relief.  *See id.* at 22.

Based on the facts before the Court in Plaintiff's proposed second amended complaint, the alleged dedication of staff and resources to field phone calls and provide advice to Plaintiff's members, as well as allegedly cancelling events, is "insufficient to establish organizational standing to pursue a claim for injunctive or declaratory relief." *Rodriguez v. Winski*, No. 12 Civ. 3389, 2020 WL 1188462, *3 (S.D.N.Y. Mar. 12, 2020); *see also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir. 2015) ("Even assuming that such expenditures 'perceptively impaired' [plaintiff's] activities, they at best demonstrate *past* injury.  Such injury might admit standing to sue for compensatory damages.  But it is not an injury that can be redressed through the prospective declaratory and injunctive relief sought in this action") (emphasis in original) (internal citation omitted).  Thus, under the Second Circuit's reasoning in *Knife Rights*, the injury alleged by Plaintiff does not provide Plaintiff organizational standing to pursue claims for the sought after injunctive or declaratory relief.  *See Rodriguez*, 2020 WL 1188462, at *3.

While the Second Circuit's reasoning in *Knife Rights* indicates that the injury alleged might provide Plaintiff organizational standing to pursue a claim for compensatory damages, Plaintiff has failed to proffer sufficient facts to sustain its assertion of organizational standing to pursue any such claim.  "The Second Circuit has repeatedly observed that, in contrast to a motion to dismiss for failure to state a claim, 'when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Rodriguez*, 2020 WL 1188462, at *3 (quoting *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  "Therefore, in order to pursue a claim to recover compensatory damages for resources it allegedly expended, [Plaintiff] must adduce sufficient facts that establish an

injury-in-fact on their face and without the benefit of any inference that may be drawn therefrom." *Id.*

"To establish an injury-in-fact, an organizational plaintiff must show that it has suffered 'a "perceptible impairment" of [its] activities.'" *Id.* (quoting *Nnebe*, 644 F.3d at 157). An entity must "sufficiently allege that 'the defendant's conduct or policy *interferes with or burdens an organization's ability to carry out its usual activities*.'" *Id.* at *4 n.2 (emphasis in original) (quoting *De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 182 (S.D.N.Y. 2019)). Purported injuries must be "sufficiently distinct from the general mission of the organization[ ] at issue." *Ctr. for Food Safety v. Price*, No. 17-CV-3833, 2018 WL 4356730, *5 (S.D.N.Y. Sept. 12, 2018).

The proposed second amended complaint is completely devoid of any allegation detailing how the general support that was purportedly provided by Plaintiff, which consisted of fielding phone calls and providing advice to its members, was inconsistent with Plaintiff's ordinary operations of advocating its members' rights. *See* Dkt. No. 22-1 at ¶ 39; *see also Rodriguez*, 2020 WL 1188462, at *4 n.2. Plaintiff also provided no specific facts to allege that Defendants' conduct burdened Plaintiff's ability to carry out its usual activities. *See id.* Furthermore, while Plaintiff alleges that it was forced to cancel firearms education and training events, *see* Dkt. No. 22-1 at ¶ 40, Plaintiff does not reference how many events were cancelled because of the

15

Executive Order.[2]  Additionally, Plaintiff did indeed organize an online training program.  *See*

Dkt. No. 23-2.

Plaintiff's failure to provide any specific facts to support its assertion of injury-in-fact

requisite for organizational standing is dispositive.  Plaintiff was well aware from Defendants'

pre-motion letter, which preceded Plaintiff's cross-motion for leave to amend, that Defendants

were challenging Plaintiff's standing.  *See* Dkt. No. 14; *see also Rodriguez*, 2020 WL 1188462,

at *5.  Furthermore, "absence of data to support injury-in-fact is particularly striking since the

record[s necessary] should presumably be in [Plaintiff's] possession."  *Rodriguez*, 2020 WL

1188462, at *5.  "[T]o allow standing based on these allegations alone would mean that any

entity that spends money on an issue of particular interest to it would have standing, which

would in turn contravene the principle that an entity's 'mere interest in a problem' cannot support

standing."  *Price*, 2018 WL 4356730, at *5 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739

(1972)).

In sum, having failed to establish that the alleged conduct by Defendants caused any

"perceptible impairment" to its ordinary advocacy operations, Plaintiff has failed to satisfy its

burden to affirmatively show an injury-in-fact requisite for organizational standing.  *Rodriguez*,

---

[2] The Court notes that Plaintiff chose to cancel events around the United States due to the COVID-19 pandemic.  *See* Dkt. Nos. 22-3, 22-4.  The Court will take judicial notice of the documents and screenshots Defendants submitted from Plaintiff's website.  *See* Dkt. Nos. 23-1, 23-2, 23-3, 23-4.  "A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'"  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015); *see also Marano v. Metro. Museum of Art*, No. 19-CV-8606, 2020 WL 3962009, *1 n.1 (S.D.N.Y. July 13, 2020).

2020 WL 1188462, at *5.  Therefore, Plaintiff's cross-motion to amend the first amended

complaint is denied, because the proposed amendment would be futile.[3]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for judgment on the pleadings (Dkt. No. 18) is

**GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to amend the first amended complaint

(Dkt. No. 22) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 14, 2020
          Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] Defendants also argued that Plaintiff's claims against the New York State Department of Economic Development and the New York State Department of Labor should be dismissed because the claims are barred by the Eleventh Amendment to the United States Constitution.  *See* Dkt. No. 18-1 at 4–5.  Plaintiff's proposed second amended complaint removed these two agencies as Defendants, and thus, Defendants' argument has been rendered moot.

17